**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

BRENDA WILLIAMS,

                                   Plaintiff,                    1:18-cv-0349 (BKS/CFH)

v.

WILLIAM NORRIS, *Narcotic C.R.U. —*
*Badge #2468, et al.,*

                                 Defendants.

**Appearances:**

*Plaintiff pro se:*
Brenda Williams
Albany, NY 12209

*For Defendants:*
Abigail W. Rehfuss
Stephen J. Rehfuss
The Rehfuss Law Firm, P.C.
40 British American Blvd.
Latham, NY 12110

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff pro se Brenda Williams brings this action under 42 U.S.C. § 1983 against four

Albany Police Department officers alleging constitutional violations stemming from two separate

searches of Plaintiff's residences. (Dkt. No. 12). Specifically, Plaintiff alleges that: (1)

Defendants illegally searched Plaintiff's residences, in violation of the Fourth Amendment; (2)

Defendant Chromczak's failure to return Plaintiff's personal property constituted an illegal

seizure, in violation of the Fourth Amendment; (3) Defendants caused excessive damage to

Plaintiff's personal property, in violation of the Fourth Amendment; (4) Defendants subjected Plaintiff to false arrest, in violation of the Fourth Amendment; and (5) Defendant Gavigan subjected Plaintiff to excessive force in violation of the Fourteenth Amendment when he pointed a gun at Plaintiff's head.[1] Defendants move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. (Dkt. No. 40). Plaintiff opposes Defendant's motion.[2] (Dkt. No. 53). For the reasons discussed below, Defendants' motion is granted in part and denied in part.

## II.    FACTS[3]

Defendants William Norris, Scott Gavigan, Joseph Chromczak, and Lieutenant Gorleski are officers with the Albany Police Department assigned to the Community Response Unit ("CRU"). (Dkt. No. 40-2, ¶ 1). Defendant Gorleski was the "lead investigator supervisor." (Dkt. No. 40-12, at 2). Albany Police Department's CRU was "responsible for investigating narcotics offenses, gangs or violent gun crimes, and prostitution throughout the City of Albany." (Dkt. No. 40-2, ¶ 1; Dkt. No. 40-13, ¶ 1).

---

[1] Plaintiff had previously alleged additional claims, including claims on behalf of Edmond Williams and against the Albany County Police Department, which were dismissed upon review of the second amended complaint. *Williams v. Norris*, 2019 U.S. Dist. LEXIS 61750 (N.D.N.Y. Apr. 5, 2019), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 90187 (N.D.N.Y. May 30, 2019).

[2] Defendants filed a letter motion asking that Plaintiff's response, which was served more than a week late, be rejected as untimely. (Dkt. No. 52). Upon review of the Defendants' motion for summary judgment, the Court noted that Defendants had failed to serve the pro se Plaintiff with the requisite Notification of the Consequences of Failing to Respond to a Summary Judgment Motion; the Court accepted Plaintiff's untimely response; served Plaintiff with the requisite notification; and gave Plaintiff an opportunity to supplement her response. (Dkt. No. 57). Plaintiff did not supplement her response.

[3] The facts are drawn from the second amended verified complaint, (Dkt. No. 12), Defendant's statement of material facts, (Dkt. No. 40-2), and attached exhibits, and Plaintiff's response thereto, (Dkt. No. 53-2). Plaintiff failed to file the exhibits that she had submitted in connection with her amended complaint (Dkt. Nos. 8-1, 9 and 10) with the second amended complaint, which is the operative pleading. (Dkt No. 12). In light of her pro se status the Court has considered those exhibits. *See Augustus v. Brookdale Hosp. Med. Ctr.*, No. 13-cv-5374, 2015 WL 5655709, at *1 n.2, 2015 U.S. Dist. LEXIS 128495, at *2 n.2 (E.D.N.Y. Sept. 24, 2015) ("The Court will consider facts from the [pro se] Plaintiff's Original Complaint that are not repeated in the Amended Complaint.") (citation omitted). The facts are construed in the light most favorable to Plaintiff. *Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007).

### A. Events at 166E Third Avenue

#### 1. Application for a Search Warrant

An October 14, 2016 application for a search warrant to search Plaintiff's residence at 166E Third Avenue in Albany described the following investigation involving Plaintiff's son, Edmond Williams. (*See generally* Dkt. No. 40-4). During the second week of September, members of CRU interviewed a confidential informant ("CI") who stated that a male known as "Magic," later identified as Plaintiff's son, Edmond Williams, was selling large quantities of heroin in the Albany, New York area. (*Id*. at 5). During the fourth week of September, CRU members electronically monitored a transaction in which the CI purchased heroin from Williams. (*Id*. at 6). On October 11, 2013, CRU received information from the CI that Williams was going to the area of State Street and Lark Street in Albany to sell heroin. (*Id*.). Defendant Gavigan established surveillance at Plaintiff's residence and observed William's vehicle parked on Third Avenue in the area of 166. (*Id*.). Gavigan saw Williams run from the area of 166E Third Avenue, and drive off. (*Id.*). Gavigan then drove to the area of State Street and Lark Street, and saw a male standing at Williams' passenger side window. (*Id.*). Gavigan opined that his observations were consistent with the manner in which narcotics are sold in Albany. (*Id.*). City of Albany Housing Department records reflect that 166E Third Avenue was registered to Plaintiff, and a check of Albany Police Department Records Management showed Williams listed Plaintiff as his mother. (*Id*. at 7).

During the second week of October 2016, CRU members arranged to have the CI make another electronically-monitored purchase of heroin from Williams. (*Id*. at 6-7). An officer saw Williams enter 166 Third Avenue and then leave 166 Third Avenue and drive away. (*Id.* at 7). A short time later Williams arrived at the "meet location" where he sold heroin to the CI. (*Id*.).

On October 4, 2016, CRU officers applied for "various search warrants for Mr. Williams' Troy apartment and vehicle, as well as Plaintiff's apartment at 166E Third Avenue in Albany, NY." (Dkt. No. 40-2, at ¶ 7). The warrants sought permission to "enter [Plaintiff's] premise . . . without first knocking and/or giving notice." (Dkt. No. 40-4, at 7). An Albany City Court Judge signed the search warrants on October 14, 2016, approving "entry [at Plaintiff's residence] without giving notice of [their] authority or purpose." (*Id.* at 2). The warrant for Plaintiff's residence authorized officers to search for, inter alia, heroin, items "that might be used in packaging of individual quantities of Heroin," and records and documents "tending to show the existence of a Heroin possession and/or sale enterprise." (*Id.* at 1-2). CRU members first executed the warrant for Williams' Troy, New York address, "where they seized large quantities of heroin, packaging materials, currency, and Mr. Williams' vehicle, a Bentley." (Dkt. No. 40-2, at ¶ 8; Dkt. No. 40-7, at 1-3). Williams was arrested and, during his arrest, officers obtain a set of keys to 166E Third Avenue. (Dkt. No. 40-13, at ¶ 3; Dkt. No. 12, at 4).

## 2.    Execution of the Search Warrant

On October 14, 2016, at approximately 10:00 a.m., (Dkt. No. 40-11, at 29), Defendants executed the search warrant at Plaintiff's 166E Third Avenue residence using Williams' keys to enter the apartment without knocking. (Dkt. No. 40-13, at ¶ 3; Dkt. No. 12, at 4). Defendant Norris avers that the officers "announced their presence" while entering. (Dkt. No. 40-13, ¶ 3). "As is standard procedure," according to Norris, the officers' "weapons were drawn and in the ready position as rooms were cleared." (*Id.*).

Plaintiff and her grandson were in the residence upstairs when police entered. (Dkt. No. 40-11, at 29; Dkt. No. 40-13, ¶ 5). According to Plaintiff, Defendants "put the key in the door, and they rushed upstairs." (Dkt. No. 40-11, at 30). Detective Scott Gavigan pointed his loaded gun at her head while entering the home. (Dkt. No. 12, at 4; Dkt. No. 40-11, at 30). Plaintiff, who

requires the use of supplemental oxygen, was having trouble breathing. (Dkt. No. 40-11, at 30; Dkt. No. 40-13, at ¶ 5). Plaintiff testified that she removed her oxygen to "to run in the hallway to see who was coming up the stairs," at which point Defendant Gavigan pointed a gun and told her to "put your hands up and stay still." (Dkt. No. 40-11, at 31).

Plaintiff identified Defendant Chromczak as being upstairs with Defendant Gavigan and noted that there were "about three or four" officers upstairs in total. (Dkt. No. 40-11, at 33-34). Plaintiff was having difficulty breathing because she did not have her oxygen so it took several minutes to assist her downstairs. (Dkt. No. 40-2, at ¶ 11; Dkt. No. 53-2, ¶ 11). Plaintiff testified that it took her approximately ten to fifteen minutes to get from the hallway to the living room, and that she kept telling officers, "I can't breathe, I can't breathe." (Dkt. No. 40-11, at 31, 35). Plaintiff testified that officers had her walk from the hallway, down the stairs, and into the living room with Defendant Gavigan pointing a gun at her head the entire time. (*Id*. at 32-33). Once Plaintiff was in the living room and seated on the couch, an officer retrieved her oxygen from upstairs and gave it to her. (*Id*. at 35).[4] Once Plaintiff was seated on the couch, officers informed Plaintiff that they were going to search her house for narcotics. (*Id*. at 36-37).

Defendants contend that Defendant Gavigan "was not present during the search" of Plaintiff's apartment. (Dkt. No. 40-2, ¶ 9). In verified interrogatories Defendants state that Defendant Gavigan "was not at 166 3rd Ave Apt. E"; Defendant Gavigan "executed the search warrant in Troy, NY where keys were obtained from Edmond Williams for 166E Third Ave."

---

[4] Plaintiff alleged in the second amended complaint that she had a "slight heart attack" during the search of 166E Third Avenue. (Dkt. No. 12, at 4). However, during her deposition she testified that she did not have a heart attack, but rather experienced symptoms of her pre-existing heart condition. (Dkt. No. 40-11, at 45). She testified that her "heart is in AFib," causing an irregular heartbeat, and during the search her "heart was beating [] too fast because [she] was nervous." (*Id*. at 44-45).

(Dkt. No. 40-12, at 3). The Albany Police Department case report for 166E Third Avenue lists Defendant Gavigan as the "case officer." (Dkt. No. 40-6, at 1).

The parties agree that Plaintiff was never placed in handcuffs, and that she stayed seated on the couch the entire time officers searched her home. (Dkt. No. 40-11, at 40-41). Plaintiff never asked to go to the bathroom or to go outside. (*Id*. at 41). Plaintiff testified that the officers were in her home for what "seemed like a long time," "like an hour and a half, maybe longer," and that she knew "it was half the day they was [sic] in there." (*Id*. at 39). Plaintiff was never charged with a crime. (Dkt. No. 12, at 9, 13).

Defendant Norris averred that "[a]t no time was any degree of force ever utilized by any of the entry team members against the Plaintiff," "at no time was Plaintiff ever handcuffed, and at no time was a gun deliberately pointed at or held to the Plaintiff's head." (Dkt. No. 40-13, at ¶ 6). Defendant Norris averred that "[d]uring the execution of the warrant, officers seized from the residence a quantity of crack cocaine, a quantity of heroin, two digital scales, one blender/sifter, a quantity of glassine bags, a set of keys, and assorted personal papers and mail." (Dkt. No. 40-13, at ¶ 7). Pictures were taken of the collected evidence. (*Id*.). Although Plaintiff disputes that any narcotics or associated paraphernalia were found in her residence, the police report and charges filed are consistent with Norris' affidavit. (Dkt. No. 40-11, at 22, 25, 52-53).[5]

Plaintiff testified that during the search, Defendant Chromczak "intruded [into] Plaintiff's bedroom and recovered a jewelry box with the contents $800.00, watches, gold chains, gold

---

[5] During questioning after the execution of the search warrant at 166E Third Avenue, Williams admitted that the recovered narcotics belonged to him, and that he would bring them to his mother's residence when she was not paying attention. (Dkt. No. 40-5, at 1). He stated that Plaintiff had no knowledge of this. (*Id*.). Complaints dated October 14, 2016 charged Williams with, inter alia, criminal possession of a controlled substance third degree, in violation of N.Y. Penal Law § 220.16-1, in connection with: 16.8 grams of heroin and 2.4 grams of crack cocaine found in the refrigerator at 166E Third Avenue and 10 grams of heroin located in the second floor front bedroom at the apartment. (Dkt. No. 8-1, at 41-42).

rings, and a spare key to a 2005 Bentley car," none of which was ever returned to Plaintiff. (Dkt. No. 12, at 4). She acknowledged, however, that the contents in the jewelry box, the $800 in cash, watches, gold chains, gold rings, and the spare key to the Bentley all belonged to Williams, and that officers did not take any of Plaintiff's personal property. (Dkt. No. 40-11, at 44).

Plaintiff alleged that during their search of the home, officers damaged "the livingroom [sic] furniture, closets, kitchen, and bed matress's [sic]." (Dkt. No. 12, at 4). She testified that during the search, officers were "tearing [her] house up"; she said they destroyed her food, and that after her "house was a wreck." (Dkt. No. 40-11, at 21, 27-28, 39-40). Defendant Norris averred that he did "not recall any damages occurring to any of Plaintiff's property." (Dkt. No. 40-13, at ¶ 7).

After the officers left Plaintiff's residence, she found a copy of the search warrant "in the kitchen underneath a bunch of clothes and food"; she was not shown the warrant prior to the search. (Dkt. No. 40-11, at 27-28). Plaintiff alleged that the warrant was invalid, (Dkt. No. 12, at 5); she testified that she believed it was invalid because when she "went to the County Court and [] asked the secretary to look on the computer and see if they had a warrant for [her] apartment," "[i]t was not listed on the computer." (Dkt. No. 40-11, at 47).

**B.     Events at 25 Bonheim Street**

Approximately one month after the search at 166E Third Avenue, Plaintiff moved to 25 Bonheim Street, Apartment 2. (Dkt. No. 40-11, at 12; Dkt. No. 40-2, at ¶ 18). 25 Bonheim Street has two apartments – apartment 1 is on the first floor, and apartment 2 is on the second floor. (Dkt. No. 40-2, at ¶ 18; Dkt. No. 53-2, at ¶ 18; Dkt. No. 40-9, at 3).

**1.     Investigation of 25 Bonheim Street**

A February 15, 2018 application for a search warrant to search Plaintiff's residence at 25 Bonheim Street in Albany described a lengthy investigation of Justin Cabrera, who was believed

to reside in apartment 1 at 25 Bonheim Street. (*See generally* Dkt. No. 40-9). Between January 19, 2017 and February 24, 2017, Troy Police officers used a CI to arrange multiple electronically-monitored purchases of both narcotics and firearms from Cabrera in which the CI agreed to meet at 25 Bonheim Street, and Cabrera was observed exiting 25 Bonheim Street. (*Id*. at 7-13). Cabrera was arrested on February 15, 2018, and during an interview stated that he resided on the second floor. (*Id*.). The Albany Police Department Record Management System showed on January 31, 2018, Cabrera "was the victim of a Home Invasion [] at #25 Bonheim St 1st Floor Albany, NY," which was listed as Cabrera's home address. (*Id*. at 14). A review of the Albany County Probation List showed that Cabrera had listed his probation address as "#25 Bonheim St 2nd Floor." (*Id*.). Cabrera's mother corroborated this and said Cabrera used to live on the first floor with her but had moved to the second floor. (*Id*.). Based on this information, on February 15, 2018, an Albany City Court judge issued a search warrant, authorizing an entry "without giving notice" of the officers' authority or purpose for Plaintiff's apartment on the second floor of 25 Bonheim Street. (Dkt. No. 12, at 17).

## 2. Execution of the Search Warrant

According to Defendant Norris, "the residents of the address were contacted" prior to the execution of the warrant. (Dkt. No. 40-13, ¶ 8). Defendant Norris averred that "[m]embers of CRU waited outside with the occupants while the search warrant [sic] was secured," and "[o]nce the warrant was secured, the residents were able to review it prior to CRU entering the address." (*Id*. ¶ 8). Plaintiff alleged that Defendants "placed restraining handcuffs" on her "against her own free well [sic]." (Dkt. No. 12, at 13). Defendant Norris averred that Plaintiff "was asked to remain in her bedroom during the search of the address," and that she "watched her television while members of CRU stayed with her." (Dkt. No. 40-13, ¶ 10). Norris stated that Plaintiff was never handcuffed. (*Id*.).

Plaintiff alleges that Defendants Norris, Chromczak, and Gavigan "ransacked" her living room, kitchen, closets, bathroom, computers, grandchildrens' bedrooms, and destroyed a new bedroom set. (Dkt. No. 12, at 11). During her deposition, Plaintiff testified that officers "tore up" every room in the house. (Dkt. No. 40-11, at 66). She stated that officers broke the doors off of a television stand, tore a big hole in a futon, and broke about six dishes. (*Id*. at 66-68). While Plaintiff continued to describe other damage, including dresser drawers broken into pieces, a broken headboard on a bed, and a ripped shower curtain, it is not clear from her testimony which residence that testimony referred to. Plaintiff's testimony followed her description of the search at 25 Bonheim Street, but also included descriptions of an upstairs, and the 25 Bonheim apartment was all on the second floor. (Dkt. No. 40-11, at 65). Norris averred that he does "not recall any damage occurring to any of Plaintiff's property" at 25 Bonheim. (Dkt. No. 40-13, ¶ 11).

III.    **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).

## IV. DISCUSSION

### A. Illegal Search

Plaintiff alleged in her complaint that the warrants issued for both 166E Third Avenue and 25 Bonheim Street were invalid; she argues in opposition to the motion for summary judgment that the search warrant affidavit for 166E Third Avenue lacked probable cause. (Dkt. No. 12, at 5, 11-12; Dkt. No. 53-3). Defendants argue that both warrants "clearly pass constitutional muster." (Dkt. No. 40-1, at 6).

"The Fourth Amendment prohibits 'unreasonable searches and seizures,'" *United States v. Falso*, 544 F.3d 110, 117 (2d Cir. 2008) (quoting U.S. Const. Amend. IV), and requires that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized," U.S. Const. Amend. IV. "Probable cause is a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). "A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Id*. at 236 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). "The task of the issuing magistrate is simply to

make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. at 238. "A plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden." *Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991).

Here, the record establishes that the officers applied for and obtained search warrants for both of Plaintiff's residences. (Dkt. No. 40-4; Dkt. No. 40-9; Dkt. No. 12, at 17). Plaintiff's testimony that she believed the warrants to be invalid because a secretary at the County Court's office attempted to look up the warrant on a computer at Plaintiff's request, and was unable to locate it, (Dkt. No. 40-11, at 47), fails to raise an issue of fact as to the validity of the search warrants. Similarly, Plaintiff's allegation that the warrant for her apartment at 25 Bonheim was invalid because it was "made out to" Justin Cabrera who the detectives knew did not live there is without merit. The application for the search warrant at 25 Bonheim states that Cabrera and his mother informed officers that he lived on the second floor at 25 Bonheim; it further states that 25 Bonheim, second floor, was listed as his address on an Albany County Probation list. (Dkt. No. 40-9, at 14). Nothing in the record suggests that those statements were untrue.

Plaintiff argues that the 166E Third Avenue search warrant was not supported by probable cause because there was nothing "that would lead a magistrate to believe that there is probable cause to believe that plaintiff and/or plaintiff's residence is involved in any criminal activity whatsoever," because there was "no proof or even a suggestion . . . that [Williams] may have stored narctics/contraband [sic] at plaintiff's residence." (Dkt. No. 53-3, at 3). Contrary to Plaintiff's contention, Detective Wood's affidavit in support of the warrant provides information

that Plaintiff's son, Edmond Williams, was selling heroin and that in October 2016, Williams twice went to 166 Third Avenue before selling heroin. Specifically, Detective Woods received information from a confidential informant who had provided reliable information in the past that Williams "is selling large quantities of heroin"; when the informant reported that Williams would be selling a quantity of heroin, Detective Gavigan saw Williams "run from the area of 166E Third Av" before engaging in conduct consistent with the sale of narcotics; and during the second week of October 2016, Detective Regan saw Williams enter 166 Third Avenue, and drive off to sell the informant heroin, in an undercover transaction monitored by officers. (Dkt. No. 53-1, at 4-6). Although Plaintiff is correct that Williams could have "retrieved narcotics from somewhere else, prior to arriving at plaintiff's residence," (Dkt. No. 53-3, at 4), "probable cause to search a place exists if the issuing judge finds a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Ponce*, 947 F.2d 646, 650 (2d Cir. 1991) (quoting *Gates*, 462 U.S. at 238). Here, where officers observed Williams leaving the area of Plaintiff's residence to engage in the sale of narcotics, including one meeting with the CI in a drug sale monitored by law enforcement officers, Plaintiff has not met her burden of showing that the warrant was issued on less than probable cause. Thus, the execution of the search warrant did not violate the Plaintiff's Fourth Amendment rights. *See, e.g.*, *Pina v. City of Hartford*, No. 07-cv-657, 2009 WL 1231986, at *7, 2009 U.S. Dist. LEXIS 37218, at *19-20 (D. Conn. Apr. 28, 2009) (granting summary judgment to defendants on a Fourth Amendment claim when the affidavit in support of search warrant was sufficient to establish probable cause).

## B.     Illegal Seizure of Property

Plaintiff alleges that Defendant Chromczak violated her Fourth Amendment right by unlawfully seizing, and failing to return, a jewelry box containing $800, watches, gold chains, gold rings, and a spare key to a Bentley during the search of 166E Third Avenue, (Dkt. No. 12, at

4), regardless of who the property belonged to, (Dkt. No. 53-3, at 5). Defendant argues that all of the property seized belonged to Plaintiff's son, and "Plaintiff cannot state a claim for unlawful seizure of property that is not legally hers." (Dkt. No. 40-1, at 7).

"[T]he Supreme Court has held that a 'seizure' under the Fourth Amendment 'occurs when there is some meaningful interference with an individual's possessory interests in that property.'" *Heidorf v. Town of Northumberland*, 985 F. Supp. 250, 257 (N.D.N.Y. 1997) (quoting *Soldal v. Cook Cnty., Illinois*, 506 U.S. 56, 60 (1992)). Magistrate Judge Hummel specifically noted that the remaining claims included Plaintiff's "Fourth Amendment illegal seizure relating to failure to return plaintiff's personal property, *excepting that the property not belong[ing] to plaintiff be excluded*." (Dkt. No. 15, at 12) (emphasis added). Here, Plaintiff's claim fails because she did not have a possessory interest in any of the items seized. Plaintiff testified that the contents of the jewelry box, $800.00, watches, gold chains, gold rings, and spare key to the Bentley all belonged to Williams. (Dkt. No. 40-11, at 44). She has not claimed a possessory interest in any of the items; she further testified that officers did not take any personal property that she owned during the search. (*Id*.). Because none of Plaintiff's personal property was seized, summary judgment is granted on this claim.[6] *See Ostensen v. Suffolk Cnty.,* 378 F. Supp. 2d 140, 148 (E.D.N.Y. 2005) ("Without being able to establish that she had possessory interest in the house, the Plaintiff cannot successfully maintain an unreasonable seizure claim."), *aff'd*, 236 F. App'x 651 (2d Cir. 2007).

---

[6] Because Plaintiff did not own any items seized, the Court does not address whether the items that were seized were done so pursuant to the warrant.

## C.     Excessive Property Damage

Plaintiff alleges that during the searches of both her 166E Third Avenue and 25 Bonheim Street residences, Defendants Norris, Gavigan, and Chromczak[7] caused excessive damage to her personal property in violation of the Fourth Amendment. (Dkt. No. 12, at 4, 11). Defendants argue that "no property was unreasonably or maliciously destroyed" during either search, and "[t]o the extent that any damage or disarray did occur, it was incidental to the lawful search." (Dkt. No. 40-1, at 8).

"Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful[.]" *United States v. Ramirez*, 523 U.S. 65, 71 (1998). However, "it is well recognized that 'officers executing search warrants on occasion must damage property in order to perform their duty.'" *Cody v. Mello*, 59 F.3d 13, 16 (2d Cir. 1995) (quoting *Dalia v. United States*, 441 U.S. 238, 258 (1979)). A plaintiff "must establish that the officers' actions were unreasonable or malicious, and that more than ordinary disarray and damage incident to the execution of the warrant or search occurred." *Jackson v. Suffolk Cnty.*, 87 F. Supp. 3d 386, 401 (E.D.N.Y. 2015) (internal citation and quotation marks omitted). "'Some property damage caused during a lawful search is not *per se* unreasonable within the meaning of the Fourth Amendment,'" and "'[t]he reasonableness of the damage must be evaluated with reference to the target of the search,' such as a more invasive contraband search." *Id*. at 401-02 (quoting *Koller v. Hilderbrand*, 933 F. Supp. 2d 272, 278 (D. Conn. 2013)). "'Even some disarray in conducting a search, including the tangential destruction of

---

[7] Plaintiff alleges that the Defendants' supervisor, Defendant Lieutenant Rick Gorleski, "acted with gross negligence in supervising Gavigan, Norris and Chromczak," (Dkt. No. 12, at 4). Defendants have not addressed Plaintiff's claim of supervisorial liability and the Court does not address it here.

items that could not contain the object of the search does not necessarily constitute a Fourth Amendment violation.'" *Id*. at 402 (quoting *Koller*, 933 F. Supp. 2d at 278).

Plaintiff alleged that "while the detectives searched" the 166E Third Avenue residence, they damaged "the livingroom furniture [sic], closets, kitchen, and bed matress's [sic]." (Dkt. No. 12, at 4). She testified that Defendant Chromczak "tore [her] drawer up," and that officers threw her "good clothes" all over the floor and proceeded to "stamp all over" them. (Dkt. No. 40-11, at 71). With respect to the 25 Bonheim Street search, Plaintiff alleged that: Defendant Chrommczak "ransacked [her] bedroom, and destroyed [her] new bedroom"; and Defendant Gavigan "ransacked [her] closets, computers, and [her] grandchildren [sic] bedrooms, causing damage to their bedsets, and miscellousness [sic] things." (Dkt. No. 12, at 11). Plaintiff also testified that officers broke the doors off of a television stand, tore a hole in a futon, broke dishes, broke dresser drawers into pieces, broke a bed headboard, broke the pole off of a bedframe, and ripped down a shower curtain. (Dkt. No. 40-11, at 65-72). It is unclear from Plaintiff's testimony whether she was referencing damage done during the search of the 166E Third Avenue residence, the 25 Bonheim Street residence, or a combination of both. Attached to her amended complaint Plaintiff has submitted photographs of her grandson's bedroom, her bedroom, the living room, and the kitchen following the search at 166E Third Avenue, and photographs of, inter alia, a damaged television stand and damaged drawers following a search at 25 Bonheim. (Dkt. No. 8-1, at 14-23, 51-58).

The only admissible evidence that Defendants have submitted in response to these allegations is an affidavit from Defendant Norris stating that he "do[es] not recall any damage occurring to any of Plaintiff's property." (Dkt. No. 40-13, ¶¶ 7, 11). Defendant Norris states that "pictures were taken of evidence collected during the execution of the search warrant" at both

premises, but Defendants failed to submit admissible evidence of photographs taken during the execution of the warrants. Defendants submitted three sets of photographs attached to an affidavit signed by Abigail Rehfuss, Defendants' counsel in this case. (Dkt. No. 40-3). Nothing in the record or counsel's affidavit indicates that counsel had any personal involvement in the search or any personal knowledge of when the photographs were taken. Because the Court cannot rely on an attorney's attestation absent personal knowledge, *see Nasrallah v. Helio De & Artichoke Cab Co.*, No. 96-cv-8727, 1998 WL 152568, at *4, 1998 U.S. Dist. LEXIS 4173, at *11 (S.D.N.Y. Apr. 2, 1998) (finding affirmation by counsel "incompetent" because he did not have "first-hand knowledge of the facts"); *see also* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."), the Court does not consider the photographs.

Moreover, even if the Court could consider the photographs, the photographs, absent any explanation, do not refute Plaintiff's claims. Defense counsel states that one set of photographs depicts six photographs "before" the search of 166E Third Avenue, (Dkt. No. 40-8), thirteen photographs "during" the search at 166E Third Avenue, (Dkt. Nos. 41, 41-1), and sixty-four photographs "during" the search at 25 Bonheim Street, (Dkt. No. 41-2 to 41-12). (Dkt. No. 40-3, ¶ 3). The Court could not determine from the photographs taken during the search of Bonheim whether the disheveled state depicted in various images was before or after the search of the rooms depicted. (Dkt. No. 41-2 to 41-12). The six photographs which counsel states were taken before the search at 166E Third Avenue do not depict disarray in the residence, (Dkt. No. 40-8), and the images in the thirteen photographs which counsel says were taken during that search, (Dkt. Nos. 41, 41-1), do not address Plaintiff's allegations regarding the destruction of property.

In light of Plaintiff's allegations and testimony regarding the damage done to her property during both searches, the Court finds that a triable issue of fact exists as to whether a reasonable juror could find that the destruction she described, which included destroying a bedroom set, "stamping" all over clothing to the point the clothing had to be thrown away, breaking the doors off of a television stand, breaking dishes, breaking a bed headboard, and breaking the pole off of a bedframe, was unreasonable or malicious, and "more than ordinary disarray and damage incident to the execution of the warrant." *Koller*, 933 F. Supp. 2d at 279 (denying summary judgment on Fourth Amendment destruction of property claim where the plaintiff testified about damage to bathtub, couches, and television during a search and lacked any photographic evidence in support of his claim). Therefore, summary judgment is denied on Plaintiff's excessive property damage claim.

**D.      False Arrest**

Plaintiff alleges that Defendants violated her Fourth Amendment rights by arresting her without probable cause. (Dkt. No. 12, at 5, 12). Defendants argue that Plaintiff "was never confined within the meaning of the Fourth Amendment," and that even if she was, "her confinement was nevertheless privileged because it was effectuated pursuant to a valid search warrant." (Dkt. No. 40-1, at 5).

"To establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff must show that 'the defendant intentionally confined him without his consent and without justification.'" *Escalera v. Lunn*, 361 F.3d 737, 742 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). "[A] warrant to search for contraband founded upon probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Michigan v. Summers*, 452 U.S. 692, 705 (1981). This detention "represents only an incremental intrusion on personal liberty" because "if the evidence that a citizen's residence is

harboring contraband is sufficient to persuade a judicial officer that an invasion of the citizen's privacy is justified, it is constitutionally reasonable to require that citizen to remain while officers of the law execute a valid warrant to search his home." *Id*. at 703-04.

It is undisputed that Plaintiff was never handcuffed or charged as a result of the 166E Third Avenue search. (Dkt. No. 40-11, at 39; Dkt. No. 12, at 5, 12). Plaintiff was brought downstairs, allegedly at gunpoint, and directed to sit on the couch, where she remained for the duration of the search. (Dkt. No. 40-11, at 32, 35, 40). Plaintiff testified that the search lasted somewhere from an hour and a half to half of a day. (Dkt. No. 40-11, at 39). At no point did Plaintiff ask to go outside or to use the bathroom. (*Id*. at 41).

With respect to the search of 25 Bonheim Street, Plaintiff alleged that handcuffs were placed on her at some point, but that she was never charged as a result of the search. (Dkt. No. 12, at 13). Norris denied that Plaintiff was ever handcuffed. (Dkt. No. 40-13, ¶ 10). He averred that Plaintiff "was asked to remain in her bedroom during the search of the address," and that she "watched her television while members of CRU stayed with her." (*Id*.).

Even crediting Plaintiff's testimony, she has failed to produce evidence that Defendants "unduly prolonged her detention" or that the time taken to execute the searches at both residences was "not necessary to conduct an appropriate search." *Hellmann v. Gugliotti*, 279 F. Supp. 2d 150, 156 (D. Conn. 2003) (granting summary judgment on the plaintiff's false arrest claim where the plaintiff's apartment was searched for narcotics pursuant to a valid search warrant and the plaintiff remained inside her apartment for the duration of the search but was never formally arrested). The 166E Third Avenue search warrant authorized a search for heroin, (Dkt. No. 40-4, at 8), and even if "no special danger to the police is suggested by the evidence in [the] record, the execution of a warrant to search for narcotics is the kind of transaction that may

give rise to sudden violence or frantic efforts to conceal or destroy evidence." *Summers*, 452 U.S. at 702. "The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Id*.

With respect to the 25 Bonheim Street warrant, officers were authorized to search for both heroin and firearms. (Dkt. No. 40-9, at 16). Even crediting Plaintiff's allegations that she was handcuffed during the 25 Bonheim Street search, the "safety risk inherent in executing a search warrant for weapons was sufficient to justify the use of handcuffs." *Muehler v. Mena*, 544 U.S. 93, 99-100 (2005); *see also Belton v. Wydra*, No. 17-cv-02006, 2021 WL 1056770, at \*9, 2021 U.S. Dist. LEXIS 50694, at \*23-25 (D. Conn. Mar. 18, 2021) (finding that it was reasonable for officer to handcuff and detain the plaintiff during the execution of a search warrant and subsequent search of the plaintiff's residence for illegal firearms). Because Plaintiff has not alleged a detention that exceeded Defendants' authority to detain her while they conducted a search of either premises, Defendants' motion for summary judgment is granted as to Plaintiff's false arrest claim.

### E.    Excessive Force

Plaintiff alleges that Defendant Gavigan "pointed his loaded gun at [Plaintiff's] head while entering the home" to execute the search warrant at 166E Third Avenue. (Dkt. No. 12, at 4). She testified that the officers "rushed upstairs and they put the gun to me and the gun to my grandson." (Dkt. No. 40-11, at 30). She ran into the hallway "and they put the gun to my head." (*Id.*). When she was asked how long Detective Gavigan "pointed the gun at [her]" she said he pointed a gun at her the entire time that she was brought downstairs and seated on the couch, which took approximately fifteen minutes due to Plaintiff's difficulty breathing. (Dkt. No. 40-11, at 30-35, 39). Defendants contend that Defendant Gavigan was not even present at 166E Third Avenue when the warrant was executed and that, in any event the fact that officers had their

weapons drawn while executing a no knock search warrant did not violate the constitution. (Dkt. No. 40-1, at 9; Dkt. No. 40-12, at 3). Defendants argue that because Plaintiff was not seized, this claim should be evaluated under the Fourteenth Amendment's "shocks the conscience" standard, which is "more stringent" than the Fourth Amendment "objective unreasonableness" standard, and that the alleged conduct fails to shock the conscience. (Dkt. No. 40-1, at 8).

The applicable constitutional violation depends on whether Plaintiff was seized or in custody. Excessive force claims brought by someone not "seized or in custody" are brought pursuant to the Fourteenth Amendment's Due Process Clause and analyzed under a "shocks the conscience" standard. *EC ex rel. RC v. Cnty. of Suffolk*, 882 F. Supp. 2d 323, 351 (E.D.N.Y. 2012). The Second Circuit has noted that the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015) elaborates on what is conscience shocking, and that "*Kingsley* provides the appropriate standard." *Edrei*, 892 F.3d at 536-37. "*Kingsley* held that excessiveness is measured objectively and then identified various considerations that inform the ultimate Fourteenth Amendment inquiry: whether the governmental action was rationally related to a legitimate government objective." *Id.* (citing *Kingsley*, 576 U.S. at 397). In short, "*Kingsley* teaches that purposeful, knowing or (perhaps) reckless action that uses an objectively unreasonable degree of force *is* conscience shocking." *Edrei*, 892 F.3d at 536. On the other hand, excessive force claims brought by someone who is seized or in custody fall under the Fourth Amendment's "objective reasonableness" standard, "rather than under a substantive due process standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). To establish a Fourth Amendment claim for excessive force, plaintiffs must show that "the force used was excessive or unreasonable in light of the circumstances." *Williams v. City of Mount Vernon*, 428 F. Supp. 2d 146, 157 (S.D.N.Y. 2006) (*citing Graham*, 490 U.S. at 395-96).

In any event, regardless of which standard the Court applies, Defendant Gavigan is entitled to summary judgment on this claim. Even crediting Plaintiff's version of events, Defendant Gavigan's alleged conduct entering the residence with his weapon drawn and pointed at Plaintiff's head, and keeping the gun pointed at Plaintiff until she was seated on the couch was not objectively unreasonable or conscience shocking. Inherent in an officer's authority "to detain an occupant of the place to be searched is the authority to use reasonable force to effectuate the detention." *Muehler,* 544 U.S. at 99. Here, Norris has averred that due to the concerns for officer safety, during the execution of a no-knock warrant involving narcotics and/or firearms, "it is standard practice to have department issued weapons unholstered until the residence is secured. Once the residence is deemed secure, all duty weapons are and were holstered and returned to a safe condition." (Dkt. No. 40-13, at 2). Plaintiff's allegation that Gavigan entered the residence with his gun drawn and pointed at Plaintiff, and pointed the gun at Plaintiff during the time he escorted her downstairs fails to state a constitutional violation. *See, e.g., Pina,* 2009 WL 1231986, *7-8, 2009 U.S. Dist. LEXIS 37218, at *23 (granting summary judgment for defendants on excessive force claim because it was not unreasonable for officers executing a search warrant for drugs to have their guns drawn and pointed at plaintiffs during the execution of the warrant); *Lynch v. City of Mt. Vernon*, 567 F. Supp. 2d 459, 467-68 (S.D.N.Y. 2008) (finding that it was reasonable for police officers to hold the plaintiffs, including children, "at gunpoint and handcuff[] the adult males" for approximately three hours "while searching the Residence for guns, drugs and a drug dealer"); *Bolden v. Vill. of Monticello*, 344 F. Supp. 2d 407, 419 (S.D.N.Y. 2004) ("In executing a search warrant for drugs, as in this case, it is reasonable for police officers to enter a residence with guns drawn to secure the area and prevent

harm to themselves or others."). Thus, summary judgment is granted as to Plaintiff's excessive force claim.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 40) is **GRANTED** as to Plaintiff's illegal search, illegal seizure, false arrest, and excessive force claims; and it is further

**ORDERED** that Plaintiff's illegal search, illegal seizure, false arrest, and excessive force claims are **DISMISSED with prejudice**; and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 40) is otherwise **DENIED**.

**IT IS SO ORDERED.**

Dated:   July 9, 2021
             Syracuse, New York

Brenda K. Sannes
U.S. District Judge